IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 3:10-cv-592

| | |
|---|---|
| Beth Ann Blaney, Jamie Boles, Janet Brice, Deloris Ashcraft, Catherine Cheatham, Rosa Lee Harris, Patricia Madonia, Tara McGee, Micah Robinson, and Carolina Uribe,<br><br>    Plaintiffs,<br><br>vs.<br><br>Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System,<br><br>    Defendant. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL** |

## I. INTRODUCTION

Defendant, The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas HealthCare System ("CHS" or "Defendant"), files this Motion to Disqualify Plaintiffs' Counsel given the existence of an inherent, blatant, and irreconcilable conflict of interest among the named Plaintiffs, Opt-in Plaintiffs, and putative class members that will injure both the Plaintiffs and CHS. The irreconcilable conflicts faced in the present case by Plaintiffs' Counsel, and which would be faced by any other counsel, cannot be cured or waived.

Plaintiffs' Counsel filed this litigation under the Fair Labor Standards Act ("FLSA"). Plaintiffs and Opt-in Plaintiffs claim that CHS' management and supervisory nurses unlawfully required Plaintiffs and the putative class, who are hourly nurses and nursing assistants, to work through and/or during their otherwise unpaid meal breaks. However, this putative class of hourly nurses and nursing assistants includes the very management and supervisory nurses who allegedly required Plaintiffs to work through and/or during their meal periods without compensation – Assistant Nurse Managers and Charge Nurses.

In fact, two of the named Plaintiffs, Beth Ann Blaney and Jamie Boles worked as Assistant Nurse Managers.[1] Opt-in Plaintiff Raquel Cassie also worked as an Assistant Nurse Manager.[2] Furthermore, at least six of the named and Opt-in Plaintiffs worked as Charge Nurses, i.e., Beth Ann Blaney, Jamie Boles, Catherine Cheatham, Tara McGee, Kelly Bradshaw, and Patrick Harrison.[3] In contrast, eight of the named Plaintiffs and Opt-ins, Deloris Ashcraft, Janet Brice, Rosa Lee Harris, Patricia Madonia, Micah Robinson, Carolina Uribe, Jeremy Britt, and Kim Coveney, never worked as Assistant Nurse Managers or Charge Nurses.[4]

Concurrent representation of these two groups of CHS employees presents an irreconcilable conflict of interest. Assistant Nurse Managers and/or Charge Nurses are responsible for scheduling, supervising, and overseeing the meal periods, for entering variances to the nurses' and nursing assistants' time records to make sure they are paid for any time spent working during meal breaks, and otherwise implementing meal break practices in their units or departments. Thus, Plaintiffs' claims here pit the non-managerial nurses and nursing assistants in the putative class against the managerial, hourly nurses who are *also* in the putative class. Counsel's representation of both the alleged victims and the perpetrators of the alleged violations of the FLSA creates obvious and multiple conflicts of interest in this case. Further, those conflicts prejudice CHS by creating the very real possibility for collusion between these two groups of employees at CHS' expense.

For the reasons set forth herein, Plaintiffs' Counsel's representation of both non-managerial, hourly nurses and nursing assistants and managerial or supervisory, hourly nurses

---

[1] (Blaney Dep. 201-04, Ex. 7, Response to Interrogatory No. 4; Boles Dep. 158-60, Ex. 9, Response to Interrogatory No. 4.)
[2] (Cassie Dep. 145-47, Ex. 8, Response to Interrogatory No. 4; Coveney Dep. 17.)
[3] (Blaney Dep. 104-05; Boles Dep. 34-35; Cheatham Dep. 35; McGee Dep. 34; Bradshaw Dep. 37-38; Harrison Dep. 27.)
[4] (Ashcraft Dep. 35; Brice Dep. 21; Madonia Dep. 23; Robinson Dep. 24; Uribe Dep. 43; Britt Dep. 24; Coveney Dep. 17-18.)

should not be permitted.

## II.  STATEMENT OF FACTS

The Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas HealthCare System ("CHS") is comprised of 13 facilities and more than 450 units (i.e., departments) across these facilities.[5] Generally, each unit is overseen by an exempt Nurse Manager and hourly Assistant Nurse Managers. The Assistant Nurse Managers and Nurse Manager supervise the nurses and nursing assistants.[6] Additionally, hourly Charge Nurses also help run the unit on a given shift, and the nurses and nursing assistants report to the Charge Nurses.[7] These supervisory nurses oversee many aspects of the unit, including the responsibility of encouraging hourly, non-exempt nurses and nursing assistants to take their unpaid, uninterrupted meal break of at least 30 minutes.[8] This includes scheduling lunches, reminding the nursing employees to complete proper unique edit or variance forms that the unit has opted to utilize to report a missed or interrupted meal period, and similar duties.[9] In fact, many of the timekeepers for the units are the Assistant Nurse Managers.[10]

The named Plaintiffs and Opt-in Plaintiffs admit in their depositions that the Assistant Nurse Managers are the persons who reviewed their time and hours worked for accuracy before they were released to payroll.[11] Plaintiffs also admit that the Assistant Nurse Managers are the ones who approved their reported time and hours worked in the Kronos system and released

---

[5] *See* Exhibit 28 to Defendant's Opposition to Plaintiffs' Motion for Conditional Certification, Phillips Decl. ¶¶ 4, 7.) (Dkt. 40.)
[6] (*See e.g.*, Coveney Dep. 15-17; Bradshaw Dep. 38-42; *see also* Phillips Dec. ¶ 7.)
[7] (*See e.g.,* Coveney Dep. 17-18; Ashcraft Dep. 33-36; Bradshaw Dep. 37; Phillips Dec. ¶ 7.)
[8] (*See e.g.*, Aldridge Decl. ¶¶ 5-6, 8-13; Banks Decl. ¶ 20; F. Davis Decl. ¶¶ 5-6, 10-11; D. Davis Decl. ¶ 5; Gaydon Decl. ¶¶ 6, 8-9, 11; Giordano Decl. ¶¶ 7, 9; Lyon Decl. ¶¶ 7-8; Nicholls Decl. ¶¶ 10-11; Price Decl. ¶ 10; Tatsis Decl. ¶ 7; *see also* Phillips Dec. ¶ 7.)
[9] (*See e.g.,* Aldridge Decl. ¶¶ 5-6, 8-13; Banks Decl. ¶ 20; F. Davis Decl. ¶¶ 5-6, 10-11; D. Davis Decl. ¶ 5; Gaydon Decl. ¶¶ 6, 8-9, 11; Giordano Decl. ¶¶ 7, 9; Lyon Decl. ¶¶ 7-8; Nicholls Decl. ¶¶ 10-11; Price Decl. ¶ 10; Tatsis Decl. ¶ 7.)
[10] (*See e.g.,* Aldridge Decl. ¶¶ 6, 9-12; Byrum Decl. ¶ 12; F. Davis Decl. ¶¶ 10-11; Gaydon Decl. ¶ 11; Graham Decl. ¶ 11; Hewitt Decl. ¶ 13; Nicholls Decl. ¶¶ 10-11.)

them to payroll.[12] Plaintiffs further admit that, at those facilities using Kronos, the Assistant Nurse Managers often were the persons who canceled or reversed the Kronos meal period deduction when nurses and nursing assistants reported that they did not receive 30-minute uninterrupted meal breaks.[13] An Opt-in Plaintiff who worked as a Charge Nurse admits that she and other Charge Nurses approved the Kronos exception log (one procedure used in her unit to make corrections to time or hours worked) for nurses on her unit when she did not offer them a meal break.[14] As Charge Nurse, Tara McGee admits that she approved both her subordinate staff nurses' and her own missed and interrupted meal breaks by signing a Kronos exception log utilized by her unit.[15] Ms. McGee further admits that the Charge Nurse was the one who was supposed to cover the nurses' patients, that she sometimes covered for her staff nurses so that they could take 30-minute meal breaks, and that she sometimes cut her nurses' meal breaks short.[16]

Significantly, unlike other nurses and nursing assistants who testified about their disparate factual settings and experiences in their declarations,[17] the named Plaintiffs and Opt-in Plaintiffs testified in their depositions that the Assistant Nurse Managers and Charge Nurses are the employees who enforced the alleged policy that all nurses were required to carry their phones at all times and answer them at all times even during meal periods.[18] The named Plaintiffs and

---

[11] (*See e.g.,* Coveney Dep. 80-82; Ashcraft Dep. 84; Madonia Dep. 82; Bradshaw Dep. 38, 111-12.)
[12] (*See e.g.,* Coveney Dep. 82; Ashcraft Dep. 84; Madonia Dep. 83; Bradshaw Dep. 38, 111-12.)
[13] (*See e.g.,* Madonia Dep. 84-85; Bradshaw Dep. 38, 113; Coveney Dep. 83.)
[14] (*See e.g.,* McGee Dep. 85-89, 104-06, Ex. 5.)
[15] (McGee Dep. 148-49, Ex. 5.)
[16] (McGee Dep. 105-06.)
[17] (*See* Exhibits 1-26 to Defendant's Opposition to Plaintiffs' Motion for Conditional Certification, Aldridge Decl., Banks Decl., Brandon Decl., Byrum Decl., Carlton Decl., C. Davis Decl., F. Davis Decl., Deal Decl., Dick Decl., Dixon Decl., Gaydon Decl., Giordano Decl., Graham Decl., Harris Decl., Hewitt Decl., Hicks Decl., Lyon Decl., Montalto Decl., Nicholls Decl., Palumbo Decl., Price Decl., Smith Decl., Tatsis Decl., Tatum Decl., Waddell Decl., and Weathers Decl. ) (Dkt. 40.)
[18] (*See e.g.,* McGee Dep. 39-48, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4 and 17; Coveney Dep. 15-17, 122-24, 161, Ex. 4, Responses to Interrogatory Nos. 4, 6, 14, and 17; Brice Dep. 20, 34-35, 38-39, Ex. 1, Responses to Interrogatory Nos. 4, 5, 6, 7, 14, and 17; Ashcraft Dep. 19-21, 33, 54-60, Ex. 1, Responses to Interrogatory Nos.

Opt-in Plaintiffs admit that the Assistant Nurse Managers and/or Charge Nurses, members of putative class, are the same persons who they claim violated the FLSA.[19] For example, named Plaintiffs Beth Ann Blaney and Jamie Boles admit that as Assistant Nurse Managers they helped enforce the alleged policy that nurses carry and answer their phones at all times by making sure that their subordinate nurses carried their phones at all times. (*See* Blaney Dep. 201-04, Ex. 7, Responses to Interrogatory Nos. 4 and 6; Boles Dep. 158-60, Ex. 9, Responses to Interrogatory Nos. 4 and 6.) In response to Interrogatory No. 6, named Plaintiffs Blaney and Boles further admit that they are the very persons who violated the FLSA:

> **INTERROGATORY NO. 6**
>
> Identify each natural person who made any decision that you claim to have been in violation of the Fair Labor Standards Act, including without limitation Defendant's managers or supervisors who allegedly disciplined you or other nurses or nursing assistants for failing to take with them their respective pagers, phones or other electronic signaling devices during their lunch breaks and/or failing to answer their respective pagers, phones or other electronic signaling devices when called during their lunch breaks, as alleged in paragraph 11 of the Complaint.
>
> **RESPONSE:** Ms. Lambert, Ms. Blaney and Ms. Boles continually reinforced the policy that all nurses had to carry and answer their ASCOM phones at all times including during lunch. If a nurse was seen without their phone they were verbally reminded of the policy . . . .

(Blaney Dep. 201-204, Ex. 7, Response to Interrogatory No. 6; Boles Dep. 158-60, Ex. 9, Response to Interrogatory No. 6) (emphasis added).

---

4, 6, 7, 14, 15, and 17; Madonia Dep. 16-17, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Bradshaw Dep. 14-15, 19, 62-63, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4, 6, 14, and 17; Blaney Dep. 201-04, Ex. 7, Responses to Interrogatory Nos. 4 and 6; Cheatham Dep. 133-34, Ex. 10, Responses to Interrogatory Nos. 4 and 6; Harrison Dep. 127-29, Ex. 4, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Cassie Dep. 145-47, Ex. 8, Responses to Interrogatory Nos. 4, 6, and 17; Robinson Dep. 23, 187-90, Ex. 7, Responses to Interrogatory Nos. 4, 5, 6, 7, 14, 15, and 17; Britt Dep. 76-77, Ex. 4, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Uribe Dep. 9-11, 149, Ex. 6, Responses to Interrogatory Nos. 4, 6, 14, and 17; Harris Dep. 109-12, Ex. 7, Responses to Interrogatory Nos. 4, 6, 14, 15, and 17; Boles Dep. 158-60, Ex. 9, Responses to Interrogatory Nos. 4, 6, 7, 14, 15, and 17.)

By way of further illustration, Opt-in Plaintiff Kim Coveney admits that fellow Opt-in Racquel Cassie was one of the four Assistant Nurse Managers in her unit who was in charge of verifying that the nurses were always carrying their phones and who tracked her down to deliver her phone if she left it somewhere.[20] Opt-in Cassie also admits in her Response to Interrogatory No. 4 that she was one of the Assistant Nurse Managers "in charge of verifying that the nurses were always carrying their phones" and that she "would often bring phones to nurses who had inadvertently left their phones somewhere."[21] In her deposition, Opt-in Coveney admits:

> Q: . . . [Y]ou mentioned Raquel Cassie was an Assistant Nurse Manager who told you that you had to answer your phone when you were eating and you had to have it with you at all times, correct?
>
> A: Yes.
>
> Q: Are you aware that Ms. Cassie has, similar to you, opted into this lawsuit against the Charlotte-Mecklenburg Hospital Authority doing business as Carolinas HealthCare System?
>
> A: Yeah. I saw her the other day.
>
> . . . . .
>
> Q: So that's the same Raquel Cassie?
>
> A: That's the same one.

(Coveney Dep. 124.) Opt-in Coveney further admits that Opt-in Cassie and the other Assistant Nurse Managers verbally reprimanded her for not having her phone at lunch.[22] Opt-in Cassie confirms and admits in her Response to Interrogatory No. 6 that she is one of the persons who violated the FLSA by giving "formal verbal warnings to Christine Robinson and [Opt-in] Patrick

---

[19] *See* Footnote 18.
[20] (Coveney Dep. 122-24, 161, Ex. 4, Response to Interrogatory No. 4.)
[21] (Cassie Dep. 145-47, Ex. 8, Response to Interrogatory No. 4.)
[22] (Coveney Dep. 161, Ex. 4, Responses to Interrogatory Nos. 4 and 6.)

Harrison for failing to carry and/or answer their phones."[23] Opt-in Coveney relies in part on the Assistant Nurse Managers actions' and these reprimands to support her claim that Defendant acted willfully, intentionally, and maliciously.[24]

Here, Plaintiffs have included Assistant Nurse Managers as well as Charge Nurses in the proposed class. Plaintiff Blaney, Plaintiff Boles, and Opt-in Plaintiff Cassie worked as Assistant Nurse Managers at certain times during their employment. At least six of the named Plaintiffs and Opt-in Plaintiffs worked as Charge Nurses, i.e., Beth Ann Blaney, Jamie Boles, Catherine Cheatham, Tara McGee, Kelly Bradshaw, and Patrick Harrison. As detailed *supra*, however, Assistant Nurse Managers and Charge Nurses are alleged to have instructed nurses and nursing assistants not to carry their phones with them at all times, including during meal breaks. Additionally, in many units, Assistant Nurse Managers and/or Charge Nurses serve as timekeepers who process time for nurses and nursing assistants, including overrides to the meal break auto deduct feature of Kronos. Further, Assistant Nurse Managers and Charge Nurses in many units are responsible for informing nurses and nursing assistants of the unit's policy or practice with regard to meal periods and the procedures for notifying CHS of instances where the nurse or nursing assistant works during his or her meal period. Thus, the inclusion of Assistant Nurse Managers and Charge Nurses creates a significant and inherent conflict within the proposed class as they play an important role with regard to whether nurses and nursing assistants are compensated for missed or interrupted meal breaks, the central issue in this case.[25]

As a result of the Assistant Nurse Managers' and Charge Nurses' responsibilities,

---

[23] (Cassie Dep. 145-47, Ex. 8, Response to Interrogatory No. 6.)
[24] (Coveney Dep. 161, Ex. 4, Response to Interrogatory No. 14.)
[25] It is also significant that Plaintiffs claim Assistant Nurse Managers and/or Charge Nurses are responsible for ensuring that certain nurses and nursing assistants have their phones with them during meal periods and, in some instances, Assistant Nurse Managers and Charge Nurses have disciplined or reprimanded nurses and nursing assistants for not having have their phones during meal periods. (*See e.g.*, Footnotes 18, 19, 22, and 23.) Thus, according to Plaintiffs, Assistant Nurse Managers and Charge Nurses are also responsible for helping to enforce the

Plaintiffs' Counsel is in a position in which one set of their clients (i.e., the hourly, non-managerial nursing employees) allege that another group of their clients (i.e., those hourly nursing employees who worked as Assistant Nurse Managers or Charge Nurses) violated the FLSA by requiring them to work without receiving compensation.

## III. THE COURT SHOULD DISQUALIFY PLAINTIFFS' COUNSEL FROM THIS CASE.

Plaintiffs' Counsel's concurrent representation of hourly non-managerial nursing employees and their hourly Assistant Nurse Managers and Charge Nurses presents a direct, irreconcilable conflict of interest. This conflict will harm both sets of Plaintiffs, as well as CHS. As a result, the Court should find that Plaintiffs' Counsel is disqualified from representing Plaintiffs in this case.

### A. The Legal Standard

Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law. However, the federal courts are entitled to look to state rules of professional conduct for guidance. *Robert Woodhead, Inc. v. Datawatch Corp.*, 934 F. Supp. 181, 184 (E.D.N.C. 1995) (affirming disqualification of attorney and law firm for conflict of interest under the North Carolina Rules of Professional Conduct). This Court holds attorneys to the standards set forth in the North Carolina Rules of Professional Conduct. *See* L.R. 83.1(c).

The North Carolina Rules of Professional Conduct prohibit attorneys from concurrently representing clients with conflicting interests:

> A lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or

---

very alleged unlawful "policy" upon which Plaintiffs rely for their FLSA claim.

> (2) there is a significant risk that the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

N.C. R. Prof. Cond. 1.7(a). A lawyer may nevertheless represent a client if: (1) he reasonably believes that he will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; *and* (4) each affected client, upon an explanation of the implications of the common representation and advantages and risks involved, gives informed consent that is confirmed in writing. *Id.* at 1.7(b).

### B. Plaintiffs' Counsel Has a Conflict of Interest.

There is a clear conflict between the hourly non-managerial nurses and nursing assistants and their hourly Assistant Nurse Managers and Charge Nurses who are also in the putative class that prevents Plaintiffs' Counsel from adequately representing them both. A conflict exists where: "(1) the representation of one client will be directly adverse to another client; or (2) the representation of one or more clients may be materially limited by the lawyer's responsibility to another client . . . ." N.C. R. Prof. Cond. 1.7(a). In the present case, the named Plaintiffs' and Opt-ins' verified interrogatory responses and deposition admissions establish both of these criteria. *See id.* Plaintiffs' Counsel represents hourly employees who are the victims of the alleged violations of the FLSA, as well as the hourly Assistant Nurse Managers and Charge Nurses who would have been responsible for the other putative class members allegedly being harmed. As such, Plaintiffs' Counsel have placed themselves in a position of irreconcilably divided loyalties. If, as the Plaintiffs allege, they have been required to work during their meal breaks without compensation, the fault necessarily and admittedly lies with their individual

managers and supervisors who would have been acting in direct contravention of CHS' policies that its employees should be paid for all hours worked,[26] and in violation of the FLSA. Plaintiffs' Counsel cannot objectively and effectively represent the hourly Assistant Nurse Managers and Charge Nurses in their claims against CHS while at the same time arguing on behalf of the hourly non-managerial nursing employees that the same hourly managers or supervisors were part of an unlawful scheme to deprive the hourly non-managerial nursing employees of their wages.

The type of conflict presented here often arises when, within the same case, a supervisor attempts to be a class representative of a putative class that includes his or her direct reports. Courts do not allow it. To illustrate, in *Ellerd v. County of Los Angeles*, the court concluded that plaintiffs' counsel could not adequately represent a putative class in an FLSA case that included both social workers and their supervisors:

> In order to prove their claims, the social workers will have to show that their supervisors violated federal law and defendant's official policies by telling the social workers not to record their overtime. Given this inherent conflict, the Court cannot conclude that plaintiffs' counsel can adequately represent both the social workers and the supervisors. 2009 U.S. Dist. LEXIS 36865, *13-14 (C.D. Cal. Apr. 9, 2009).[27]

*See also Sample v. Aldi*, 1994 U.S. Dist. LEXIS 1518, *13 (N.D. Ill. Feb. 15, 1994) (stating "it is generally true that supervisory and non-supervisory employees should not be placed in the same class" and dismissing class allegations, in part, because the putative class could not include both supervisory and nonsupervisory employees); *Mateo v. V.F. Corp.*, 2009 U.S. Dist. LEXIS

---

[26] In their depositions, the named Plaintiffs and Opt-ins admit that they understood that as CHS employees they needed to report their time accurately, understood that CHS' policy is that it will pay employees for all hours worked, and understood that CHS pays its hourly nurses and nursing assistants overtime for any time worked in excess of 40 hours per week. (*See e.g.*, Coveney Dep. 72-73; Ashcraft Dep. 80-81; Madonia Dep. 75, 78; Bradshaw Dep. 103; McGee Dep. 83.)

[27] This unpublished decision, and all other subsequently cited unpublished decisions, are filed concurrently herewith as "Appendix of Unpublished Decisions."

105921, *13 (N.D. Cal. Oct. 27, 2009) (conflict existed and court denied certification under the FLSA because the putative class included the plaintiff and those she supervised, and defendant's defense that plaintiff worked employees off-the-clock during breaks brings into question the adequacy of the representation); *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 627 F.2d 944, 999 (7th Cir. 1980); *see also White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) (finding an "inherent conflict of interest" between foremen and crewmen who were plaintiffs in the same FLSA action where the foremen were responsible for keeping track of and accurately reporting their crew members' payroll information because "foremen may be held individually responsible for the potential claims of crewmen"); *Daniels v. Federal Reserve Bank of Chicago*, 194 F.R.D. 609, 618 (N.D. Ill. May 31, 2000) (supervisors and non-supervisers should not be included together in the same class); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, *3, 22 (S.D.N.Y. Nov. 13, 2009) (denying certification in a case under the FLSA and New York Labor Law because the plaintiff's interests were "antagonistic with potential class members," i.e., the class was found to be inappropriate because it included members who supervised plaintiff and other putative class members); *Alix v. Wal-Mart Stores, Inc.*, 838 N.Y.S. 2d 885, 897-98 (N.Y. Sup. Ct. 2007), *aff'd*, 868 N.Y.S. 2d 372 (3d Dept. 2008) (court found conflict and denied class certification, in part, because the proposed class included assistant managers who were the day-to-day supervisors of plaintiffs, and "many of these individuals are the very people allegedly to have participated in defendant's wrongful conduct (or, at the very least were aware of such conduct).").

Even if Plaintiffs do not seek to hold the hourly Assistant Nurse Managers and Charge Nurses individually liable under the FLSA (which allows for individual liability), Plaintiffs clearly are claiming and asserting that CHS is bound and responsible for their acts and/or

omissions under the FLSA. Again, Plaintiffs' Counsel cannot prosecute that claim and gather necessary proof and also diligently represent those same Assistant Nurse Managers and Charge Nurses. *See* N.C. R. Prof. Cond. 1.7. At a minimum, Counsel's duty to the hourly non-managerial nurse and nursing assistant Plaintiffs require them to at least consider the possibility of both arguing that the conduct of the hourly Assistant Nurse Manager and Charge Nurse Plaintiffs binds CHS and that those Assistant Nurse Manager and Charge Nurse Plaintiffs violated not only the policies of CHS but the FLSA, while Counsel's duty to the Assistant Nurse Manager and Charge Nurse Plaintiffs would require them to deny those same claims or deflect responsibility.

A simple example illustrates Counsel's impossible dilemma. CHS anticipates that in its defense of the claim of unpaid wages by the Plaintiffs, it will produce the testimony of current and former Assistant Nurse Managers and Charge Nurses who will deny that they ever suffered or permitted the hourly non-managerial nurses and nursing assistants to work during their meal breaks without compensation. At that time, Plaintiffs' Counsel will have two choices: (a) accept the testimony of the Assistant Nurse Manager and/or Charge Nurse, thereby fatally undermining the claims of hourly nursing employees who reported to that Assistant Nurse Manager and/or Charge Nurse; or (b) attempt to impeach the testimony of the Assistant Nurse Manager and/or Charge Nurse, thereby undermining that manager's credibility and adversely affecting his or her own contemporaneous claim against CHS. *See* N.C. R. Prof. Cond. 1.7, cmt. 6 ("[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.").

At the same time, if Plaintiffs' Counsel were to discover that Assistant Nurse Managers

- 12 -
Case 3:10-cv-00592-FDW-DSC   Document 42   Filed 06/11/11   Page 12 of 20

and/or Charge Nurses did, in fact, violate CHS' policies, as well as the FLSA, they would also have a conflict pertaining to the use of this evidence. Their duty to diligently represent the hourly non-managerial nurse and nursing assistant Plaintiffs requires them to use this evidence to support their claims that they were required to work during their meal breaks without compensation. However, use of this information in the litigation would alert CHS to violations of its policies which would subject Plaintiffs' Counsel's hourly managerial clients to liability. Either way, Plaintiffs' Counsel will be forced to choose which clients' interests to support, and which clients' interests to undermine. North Carolina law simply does not permit attorneys to put themselves in situations where they might have to make such choices.

### C. This Conflict Cannot Be Cured.

The Court must disqualify Plaintiffs' Counsel from representing the hourly Assistant Nurse Managers and Charge Nurses and non-managerial nurses and nursing assistants because they cannot cure their conflicts of interest by obtaining waivers from their clients.

Rule 1.7(b) provides that an attorney can concurrently represent clients with conflicting interests in certain cases if he obtains a written waiver. In this case, even with informed consent, Plaintiffs' Counsel could not appropriately represent both the hourly nurses and nursing assistants and Assistant Nurse Managers and Charge Nurses because the representation already involves "the assertion of a claim by one client against another client represented by the lawyer in the same litigation." N.C. R. Prof. Cond. 1.7(b)(3). As noted above, the named Plaintiffs and Opt-in Plaintiffs claim in their sworn interrogatory responses, and admit in their deposition testimony, that the Assistant Nurse Managers and/or Charge Nurses (who are members of putative class) are the same persons who they claim violated the FLSA.[28] By way of example,

---

[28] (*See e.g.,* McGee Dep. 39-48, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4 and 17; Coveney Dep. 15-17, 122-24, 161, Ex. 4, Responses to Interrogatory Nos. 4, 6, 14, and 17; Brice Dep. 20, 34-35, 38-39, Ex. 1, Responses

Opt-in Kim Coveney claims that Opt-in Racquel Cassie was in charge of verifying that the nurses in her unit were always carrying their phones, tracked her down to deliver her phone if she left it somewhere, and verbally reprimanded her for not having her phone at lunch.[29] The existing directly adverse conflicts identified by the current named Plaintiffs and Opt-in Plaintiffs would increase exponentially if this case proceeds as a certified collective action where more than ten thousand nurses and nursing assistants, many of whom worked as Assistant Nurse Managers and/or Charge Nurses, are invited to join.

Even assuming *arguendo* that a written waiver was not inappropriate, it is extremely unlikely that either set of Plaintiffs would agree to waive the conflict after being advised of the risks that this presents to their ability to prevail in this litigation. Indeed, the Assistant Nurse Manager and Charge Nurse Plaintiffs would also be waiving a conflict that could put their continued employment at risk if Plaintiffs' Counsel discovered evidence that they violated CHS' policy regarding compensation and/or the wage and hour laws.

Importantly, though, it would not be possible for Plaintiffs' Counsel to obtain a consent and waiver from all of the individuals whom he purports to represent in this case because it is styled as a collective action. As counsel to parties to the litigation, class action counsel possess, in a very real sense, fiduciary obligations to those not before the court. The ultimate responsibility, of course, is committed to the district court in whom, as the guardian of the rights

---

to Interrogatory Nos. 4, 5, 6, 7, 14, and 17; Ashcraft Dep. 19-21, 33, 54-60, Ex. 1, Responses to Interrogatory Nos. 4, 6, 7, 14, 15, and 17; Madonia Dep. 16-17, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Bradshaw Dep. 14-15, 19, 62-63, Ex. 1 and Ex. 2, Responses to Interrogatory Nos. 4, 6, 14, and 17; Blaney Dep. 201-04, Ex. 7, Responses to Interrogatory Nos. 4 and 6; Cheatham Dep. 133-34, Ex. 10, Responses to Interrogatory Nos. 4 and 6; Harrison Dep. 127-29, Ex. 4, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Cassie Dep. 145-47, Ex. 8, Responses to Interrogatory Nos. 4, 6, and 17; Robinson Dep. 23, 187-90, Ex. 7, Responses to Interrogatory Nos. 4, 5, 6, 7, 14, 15, and 17; Britt Dep. 76-77, Ex. 4, Responses to Interrogatory Nos. 4, 6, 7, 14, and 17; Uribe Dep. 9-11, 149, Ex. 6, Responses to Interrogatory Nos. 4, 6, 14, and 17; Harris Dep. 109-12, Ex. 7, Responses to Interrogatory Nos. 4, 6, 14, 15, and 17; Boles Dep. 158-60, Ex. 9, Responses to Interrogatory Nos. 4, 6, 7, 14, 15, and 17.)

[29] (Coveney Dep. 122-24, 161, Ex. 4, Responses to Interrogatory Nos. 4 and 6; *see also* Blaney Dep. 201-204, Ex. 7,

of the absentees, is vested broad administrative, as well as adjudicative, power. *Greenfield v. Villager Indust., Inc.*, 483 F.2d 824, 831-32 (3d Cir. 1973); *Davis v. Kraft Foods N. Am.*, 2006 U.S. Dist. LEXIS 3512, *36-37 (E.D. Pa. Jan. 31, 2006) (concluding that a putative class representative cannot waive a conflict on the class's behalf); *In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666, 677 (S.D. Fla. 2004) (expressing doubt as to whether "representative class members can waive any actual or potential conflicts for the remaining . . . members of the defined proposed class."). Thus, Plaintiffs' Counsel face, and any other counsel would face, irreconcilable conflicts in the present case that cannot be cured with waivers as contemplated by Rule 1.7(b).

### D. CHS Will Be Injured By This Conflict.

Finally -- and equally importantly -- CHS is also severely prejudiced by Plaintiffs' Counsel's conflict. This prejudice confirms its standing to bring this motion.[30] In this case, Plaintiffs' Counsel is seeking to hold CHS liable to hourly nurses and nursing assistants for damages, liquidated damages, costs, and attorneys' fees based upon their Nurse Managers', Assistant Nurse Managers', and Charge Nurses' alleged conduct of denying them compensation for meal periods during which the nurses and nursing assistants allegedly worked. In connection with its defense, CHS anticipates the absolute need to have privileged communications with its current and former Assistant Nurse Managers and Charge Nurses regarding the allegations in this lawsuit as management personnel with responsibility for the lawful operation of its units, the enforcement of the relevant policies, and the supervision of these Plaintiffs. The confidentiality

---

Responses to Interrogatory Nos. 4 and 6; Boles Dep. 158-60, Ex. 9, Responses to Interrogatory Nos. 4 and 6.)

[30] *See Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979) (allowing defense counsel to move to disqualify plaintiff's counsel based on third party conflicts because defense counsel had a right, and arguably a duty, to call the conflict of interest to the attention of the District Judge); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 1994 U.S. Dist. LEXIS 2154 (D.N.J. Feb. 23, 1994) (relying on both New Jersey Rule of Professional Conduct 8.4. and the inherent powers of the court in finding that an attorney had standing to move to disqualify opposing counsel on third party conflict of interest grounds).

of information exchanged during these communications will be compromised if the Assistant Nurse Managers and Charge Nurses also have a confidential attorney-client relationship with Plaintiffs' Counsel, who represents them here. This is particularly likely if the Assistant Nurse Managers and Charge Nurses believe that information learned in connection with this litigation will advance their position here.

In its defense, CHS also expects to offer testimony of Assistant Nurse Managers and Charge Nurses who deny that they or the Company violated CHS' policies or the law. However, these individuals will be vulnerable to agreeing with the theories of Plaintiffs' Counsel propounded on behalf of the hourly non-managerial nurse and nursing assistant Plaintiffs on cross-examination because they will not perceive Plaintiffs' Counsel as their adversary since he is, after all, also their own lawyer. *See United States v. Hreljac*, 2007 U.S. Dist. LEXIS 520 (E.D. Ky. Jan. 5, 2007) (granting motion to disqualify counsel in a criminal case because the possibility that an attorney could cross examine a former client was sufficient to create the potential appearance of a conflict of interest); *King v. Enterprise Rent-A-Car Co.*, 231 F.R.D. 255 (E.D. Mich. 2004) (finding an inherent conflict among class members in a race discrimination case who acted in a supervisory capacity over other class members because the supervisory class members could be called upon "to refute allegations of other members and testify that certain actions, such as negative evaluations or decisions not to promote, were for legitimate business reasons").

Finally, the potential for collusion among Plaintiffs' Counsel and the two sets of Plaintiffs is significant and alarming. For example, former Assistant Nurse Managers and Charge Nurses who are assured by Plaintiffs' Counsel that the Plaintiffs will not seek to hold them individually liable for violating the FLSA, may be motivated to capitalize on their shield

from potential liability in this case. In such a circumstance, there would be great motivation for those managers or supervisors to admit that they did not compensate hourly nursing employees for meal periods during which they worked (as Plaintiffs' Counsel prosecutes the Plaintiffs' claims) to buttress their claims of class-wide treatment. By such collusion, Plaintiffs' Counsel and both sets of their clients would win, and CHS would be required to pay hefty damages and attorneys' fees. The possibility for such collusion, which is aided by Plaintiffs' Counsel's conflict of interest, undermines the integrity of both the legal profession and the legal system and should not be allowed.

## IV. CONCLUSION

For the reasons set forth herein, the Court should disqualify Plaintiffs' Counsel from representing Plaintiffs in this action, dismiss Plaintiffs' Complaint, and should impose any and all other discipline that the Court deems appropriate under the circumstances.

Dated: June 10, 2011

/s/ Stephen D. Dellinger
Stephen D. Dellinger, N.C. Bar No. 16609
Jerry H. Walters, Jr., N.C. Bar No. 23319
Molly M. Shah, N.C. Bar No. 40275
LITTLER MENDELSON, P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC  28202
Telephone:  704.972.7000
Facsimile:   704.333.4005
Email:       sdellinger@littler.com
             jwalters@littler.com
             mmshah@littler.com

Angelo Spinola, Georgia Bar No. 672191
(admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E.
Suite 1500
Atlanta, GA  30326.4803
Telephone:   404.233.0330
Facsimile:   404.233.2361
Email:          aspinola@littler.com

Attorneys for Defendant
THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY d/b/a
CAROLINAS HEALTHCARE SYSTEM

## CERTIFICATE OF WORD LIMITATION

I, Stephen D. Dellinger, certify that the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** complies with the word limitation, as prescribed by Rule 3(c) of Judge Whitney's Case Management Order. This brief is 4,471 words in length (including all headings, footnotes, quotations and citations but excluding the date, counsel's signature, the case caption, this certificate and the certificate of service), and therefore does not exceed 9,000 words.

I declare under penalty of perjury that the foregoing is true and correct.

June 10, 2011

/s/ Stephen D. Dellinger
Stephen D. Dellinger, N.C. Bar No. 16609
LITTLER MENDELSON, P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005
Email: sdellinger@littler.com

Attorneys for Defendant
THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY d/b/a
CAROLINAS HEALTHCARE SYSTEM

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2011, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFFS' counsel with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following parties:

Juan A. Sanchez
The Olive Law Firm, PA
200 Queens Road, Suite 200
P.O. Box 31515
Charlotte, NC 28231
Telephone: (704) 377-7411
Email: juansanchez@olivelawfirm.com

Paul R. Dickinson, Jr.
Email: prd@lewis-roberts.com
Paige L. Pahlke
Email: paigepahlke@lewis-roberts.com
Lewis & Roberts, PLLC
One Southpark Center
6060 Piedmont Row Drive South, Suite 140
Charlotte, NC 28287
Telephone: (704) 347-8990
Facsimile: (704).347-8929

*Attorney for Plaintiffs*

/s/ Stephen D. Dellinger
Stephen D. Dellinger, N.C. Bar No. 16609
sdellinger@littler.com
LITTLER MENDELSON, P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

Attorneys for Defendant
THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY d/b/a
CAROLINAS HEALTHCARE SYSTEM

Firmwide:101943667.2 064424.1004