# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-CV-592-FDW-DSC

| | |
|---|---|
| BETH ANN BLANEY, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| CHARLOTTE-MECKLENBURG ) | |
| HOSPITAL AUTHORITY d/b/a ) | |
| Carolinas Healthcare System, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's Motion to Disqualify Plaintiffs' Counsel (Doc. No. 41). Having considered the parties' briefs in support and opposition, the record, and the applicable case law, Defendant's Motion is DENIED.

## I. BACKGROUND

Plaintiffs, a group of non-exempt nurses and nurse assistants ("NAs") employed by Defendant Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System ("Defendant" or "CHS"), filed suit on November 18, 2010, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, on behalf of themselves and all similarly situated employees. Specifically, named Plaintiffs, along with seven "opt-in" Plaintiffs, allege that Defendant has in place a policy of automatically deducting a thirty (30) minute meal break from each six-hour shift worked at certain facilities which employed "Kronos" time-keeping software. Additionally, Defendant requires Plaintiffs and other similarly situated employees to carry "ASCOM" phones, pagers, and other electronic signaling devices during their breaks. This "on call" requirement meant that Plaintiffs were frequently unable to take a full meal break, if at all, despite

having a thirty-minute break automatically deducted from their pay. Where an employee did not have the benefit of a full thirty-minute break, employees could request that their time-sheets be reconciled to reflect the time they actually worked, ensuring full compensation.[1]

CHS is comprised of 13 medical-care facilities, including nine primary hospital facilities, three nursing homes, and the James G. Cannon Research Center.[2] Within these facilities, approximately 11,000 nurses and NAs are spread over 450 units (i.e., departments), each typically supervised by an exempt Nurse Manager, as well as hourly non-exempt Assistant Nurse Managers ("ANMs") and Charge Nurses.

Defendant now moves to disqualify Plaintiffs' counsel, arguing that included among the named and opt-in Plaintiffs are non-exempt ANMs and Charge Nurses that have a role in administering meal-break policies within their respective units. Because these ANMs and Charge Nurses have a role in scheduling, supervising, and overseeing the meal periods, as well as for ensuring compliance with CHS's policy of fully compensating employees for all time actually worked by entering variances in nurses' time sheets, Defendant argues that the inclusion of these individuals in the named plaintiff group creates an incurable conflict of interest requiring disqualification of Plaintiffs' counsel. Defendant's Motion has been fully briefed and is now ripe for disposition.

---

[1] There is some dispute between the parties as to whether Defendant's policy permitted employees to have their time-sheets adjusted in the event of any interruption in the employee's meal period, or only if they were not able to take a full thirty minute "meal break." That issue will be addressed in the Court's order on Plaintiffs' Motion for Conditional Certification (Doc. No. 29), to follow.

[2] The hospital facilities include Carolinas Medical Center ("CMC"), Levine Children's Hospital, located on CMC's campus, CMC-Mercy, CMC-Pineville, CMC-NorthEast, CMC-University, CMC-Lincoln, CMC-Randolph, and Carolinas Rehabilitation. The three nursing facilities include Huntersville Oaks, Huntersville Oaks-Brookwood, and Sardis Oaks.

## II. Discussion

The North Carolina Rules of Professional Conduct, which governs in this Court, see LCvR 83.1(c), prohibit concurrent representation if such representation "involves a concurrent conflict of interest." N.C. R. Prof. Cond. 1.7(a).

A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is significant risk that the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

Id. Regardless of the conflict, a lawyer may continue to represent a client where: (1) he reasonably believes he will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation; and (4) each affected client, upon the explanation of the implications of the common representation and advantages and the risks involved, gives informed consent that is confirmed in writing. Id. at 1.7(b).

Here, Defendant argues that the dual representation of both ANMs and Charge Nurses as well as non-managerial nurses and NAs creates an inherent conflict of interest because the ANMs and Charge Nurses are responsible, in part, for enforcing CHS's on call policies and for meting out discipline for non-compliance with the on call policies. Additionally, several of the named Plaintiffs with managerial responsibilities determine when nurses in their units can take lunches, and are also responsible for reconciling time sheets when a nurse or NA has missed their meal break in order to reverse automatic Kronos time deduction. (Doc. No. 42). Ultimately, Defendant argues that this conflict is not trivial, as it places Plaintiffs' counsel in the position of having to represent one set of clients (the non-managerial employees) in their claim that another set of clients (the ANMs and

Charge Nurses) have violated the FLSA. Because part of Defendant's anticipated defense includes arguing that CHS had in place during all relevant times a policy that required compensation to employees for all work performed, and the ANMs and Charge Nurses were responsible for ensuring employees were compensated, such a conflict will force Plaintiffs' counsel into a Hobson's choice between (a) accepting the testimony of the ANMs and Charge Nurses that they reported all missed meal periods and nurses and NAs received compensation owed, thereby undermining the credibility of the non-managerial nurse's claims, or (b) arguing the ANMs and Charge Nurses violated established CHS policy, thus threatening the interests of their clients by opening them to possible adverse employment action. (Id.) Additionally, Defendant argues that this conflict is prejudicial due to the anticipated need for privileged communications between CHS and current and former management, including ANMs and Charge Nurses, as well as because of the possibility for collusion among Plaintiffs to Defendant's detriment and taint that may arise from Plaintiffs' counsel cross-examining their own clients, who may be called as defense witnesses, on the stand. (Id.)

Motions to disqualify counsel are not looked upon favorably. "The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel." Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992). Additionally, courts are to "remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." Id. (citing Woods v. Covington Cnty. Bank, 537 F.2d 804, 813 (5th Cir. 1976)). In order to avoid the potential for abuse, the Fourth Circuit has held that disqualification for violations of an ethical canon "may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his clients interests might in fact occur." Id. at 145 (citing Aetna Casualty & Surety Co. v. United States, 570 F.2d 1197, 1200-02 (4th Cir. 1978)). While it may be that, in a close case, doubts are

4

to be resolved in favor of disqualification, United States v. Clarkson, 567 F.2d 270, 273 n. 3 (4th Cir. 1977), "some stronger objective indicator . . . than simple judicial intuition is needed to warrant the drastic step of disqualification of counsel." Shaffer, 966 F.2d at 145.

On the record before it, the Court concludes that disqualification is unwarranted at this time. Many of the alleged dangers envisioned by Defendant in the continued representation by Plaintiffs' counsel are speculative, such as the danger of collusion and corruption of the adversarial process. At this point in the litigation, the interests of the non-exempt managerial employees and non-managerial employees remain the same, as Plaintiffs allege Defendant's automatic deduction policy affected them both equally. Additionally, the potential for Plaintiffs' counsel to have to choose between undermining the non-managerial nurses and NAs credibility or opening the ANMs and Charge Nurses to the threat of adverse employment action for violating CHS compensation policy is entirely of Defendant's making. Accordingly, the potential for abuse of Defendant's Motion for strategic or harassment purposes outweighs any conflict that exists at this point in the litigation.

### III. Conclusion

IT IS THEREFORE ORDERED that because the potential conflict remains speculative at this point but an actual conflict of interest may become apparent as this litigation progresses to consideration of the merits of Plaintiffs' cause, Defendant's Motion to Disqualify Plaintiffs' Counsel (Doc. No. 41) is DENIED without prejudice.

IT IS SO ORDERED.

Signed: September 13, 2011

Graham C. Mullen
United States District Judge

5