# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:10-CV-592-FDW-DSC

| | | |
|---|---|---|
| **BETH ANN BLANEY, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **ORDER** |
| **CHARLOTTE-MECKLENBURG** | ) | |
| **HOSPITAL AUTHORITY d/b/a** | ) | |
| **Carolinas Healthcare System,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER is before the Court on Plaintiffs' Motion for Conditional Certification of Collective Action ("Certification Motion") (Doc. No. 29) and Defendant's Motion to Strike Class Allegations Contained in Plaintiffs' and Opt-In Plaintiffs' Declarations and Affidavits submitted in support of their Certification Motion ("Motion to Strike") (Doc. No. 36). Having considered the parties' briefs and arguments, as well as the record and applicable law, and for the reasons set forth in this Order, Plaintiffs' Certification Motion is DENIED and Defendant's Motion to Strike is DENIED as moot.

## I. BACKGROUND

Plaintiffs, a group of non-exempt nurses and nurse assistants ("NAs") employed by Defendant Charlotte-Mecklenburg Hospital Authority d/b/a Carolinas Healthcare System ("Defendant" or "CHS"), filed suit on November 18, 2010, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., on behalf of themselves and all similarly situated employees. CHS is comprised of 13 medical-care facilities, including nine primary hospital

facilities, three nursing homes, and the James G. Cannon Research Center.[1]  Within these facilities, approximately 11,000 nurses and NAs are spread over 450 units (i.e., departments), each typically supervised by an exempt Nurse Manager, as well as hourly non-exempt Assistant Nurse Managers ("ANMs") and Charge Nurses.

As part of their principal claim, Plaintiffs allege that Defendant had a policy in place since December 1, 2007, which required that Plaintiffs carry pagers, "ASCOM" phones, or other electronic signaling devices while on their respective lunch breaks.  Plaintiffs were required to answer any pages or calls they received during their lunch breaks and return to work as needed for the purposes of attending to patients.  This "on-call" requirement meant that Plaintiffs regularly had their lunch periods interrupted, were unable to leave their assigned units during their lunch period, or failed to take a lunch break at all.  Plaintiffs were disciplined for failing to carry their signaling devices or for failing to answer pages when called during their lunch breaks.  During this same period, Plaintiffs allege that Defendant had in place a policy which automatically deducted a thirty (30) minute meal break from each six-hour shift worked, regardless of whether a full thirty minute break was taken, and despite knowing that Plaintiffs were required to be "on-call" and were regularly unable to take a full thirty-minute break, if at all.  Plaintiffs thus allege that Defendant has failed to pay its employees the applicable regular hourly rate for unpaid lunches.

Additionally, Plaintiffs allege that Defendant has failed to pay overtime compensation in the amount of one and one-half (1.5) times the regular rate for hours worked in excess of forty (40) hours per week as related to the unpaid lunch periods, in violation of 29 U.S.C. § 207(a).  Finally,

---

[1] The hospital facilities include Carolinas Medical Center ("CMC"), Levine Children's Hospital, located on CMC's campus, CMC-Mercy, CMC-Pineville, CMC-NorthEast, CMC-University, CMC-Lincoln, CMC-Randolph, and Carolinas Rehabilitation.  The three nursing facilities include Huntersville Oaks, Huntersville Oaks-Brookwood, and Sardis Oaks.

2

Plaintiffs allege that Defendant has failed to keep and preserve accurate personnel records and time sheets in violation of 29 U.S.C. § 211(c). Plaintiffs seek liquidated damages in the amount of unpaid wages for lunch and/or overtime wages owed by Defendant, as well as an injunction against continued violations of FLSA.

Plaintiffs, who include named Plaintiffs Beth Ann Blaney, Jamie Boles, Janet Brice, Deloris Ashcraft, Catherine Cheathem, Rosa Lee Harris, Patricia Madonia, Tara McGee, Micah Robinson, and Carolina Uribe as well as seven "opt-in" Plaintiffs, now seek conditional certification as a collective action pursuant to 29 U.S.C. § 216(b). The named and opt-in Plaintiffs have combined to work in nine of the 450 CHS units. In addition to conditional certification, Plaintiffs also move for the Court to order Defendant to provide Plaintiffs' counsel with the names, last known addresses, email addresses, and telephone numbers of all putative class members for the purpose of issuing notice. Finally, Plaintiffs request that the Court approve the proposed notice and direct that notice of this action, outlining instructions on how to opt-in, be sent to "all others similarly situated to Plaintiffs." (Doc. No. 29). The contours of the putative class, as originally proposed by Plaintiffs in their Certification Motion is not altogether clear, although it appeared Plaintiffs sought certification to facilitate notice to all non-exempt nurses and NAs employed by CHS at all facilities. In their reply brief in support of their Motion, Plaintiffs proposed narrowing the class to only those nurses and NAs employed at "CHS in-patient facilities" which utilized time-keeping software that employed an automatic meal break deduction. (Doc. No. 47 at 9).

Defendant opposes conditional certification and also moves to strike class allegations contained in the supporting documents Plaintiffs submitted with their Certification Motion, arguing that Plaintiffs' deposition testimony reveals that the named and opt-in Plaintiffs lack personal knowledge as to many of the statements averred to in their affidavits and declarations supporting

3

certification. (Doc. No. 37). Both Plaintiffs' Certification Motion and Defendant's Motion to Strike have been fully briefed. The Court heard oral argument on both motions at a Certification Hearing on September 12, 2011, where the Court denied both motions. This Order, further detailing the Court's reasoning, follows.

## II.  FLSA Standard

The FLSA allows employees to bring an action to recover unpaid minimum wages and overtime pay on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Under the FLSA, a district court may exercise its discretion and, in appropriate cases, certify an action as a "collective action" and facilitate notice of the suit to a putative class of potential plaintiffs. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 771 (D. Md. 2008). Unlike in a class action certified pursuant to Fed. R. Civ. P. 23, where plaintiffs are bound by the judgment unless they opt out of the action, plaintiffs wishing to join an FLSA collective action are required to opt *into* the action by filing written consent to join the action with the district court. § 216(b); Romero v. Mountaire Farms, Inc., ___ F. Supp. 2d ___, 2011 WL 2358506 at *2 (E.D.N.C. June 9, 2011) (slip copy). Certification of a collective action is appropriate where (1) there are similarly situated individuals and (2) those individuals opt-in to the pending action. Romero, 2011 WL 2358506 at *2.

In order to be certified as a collective action, the members of the proposed class must be "similarly situated," meaning "plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions . . . ." De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (citing Ellen C. Kearns, The Fair Labor Standards Act, § 18.IV.D.3 (1999)). Class members need not be identically situated,

4

however, and "[d]ifferences as to time actually worked, wages actually due and hours involved are . . . not significant to this determination." Id.; see also Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (noting that the "similarly situated" requirement is not a difficult one to meet).

Although the Fourth Circuit has not enunciated a test for conditional certification, courts typically follow a two-step approach when deciding whether the named Plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action. See, e.g., Purdham v. Fairfax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (citations omitted). At the first stage, commonly referred to as the "notice stage," "if the court makes the preliminary determination that notice should be given to potential class members, it 'conditionally certifies' the class and potential class members can then 'opt-in.'" Id. Once most of the discovery has occurred "and the matter is ready for trial," the defendant can trigger the second stage of the inquiry by moving to "decertify" the class. Id. "At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" Id. Although the standard for conditional certification at the notice stage is normally "fairly lenient," McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010), when there is sufficient evidence in the record at the first stage to make clear that certification is not appropriate, the court "can collapse the two stages of the analysis and deny certification outright." Purdham, 629 F. Supp. 2d at 547 (citing Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004)).

The Court's discretion to facilitate notice is not unfettered and the Court should not certify a collective action "unless the facts and the circumstances of the case illustrate that a class of similarly situated aggrieved employees exists." Id.; see also Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (requiring "some identifiable factual nexus which binds the named

5

plaintiffs and the potential class members together as victims of a particular alleged" policy). Ultimately, the question comes down to whether facilitating notice in order to group " common issues of law and fact arising from the same alleged . . . activity" into a single proceeding will promote judicial economy. Hoffmann-LaRoche, 493 U.S. at 170. The Plaintiffs bear the burden of demonstrating that certification is appropriate, and while the burden may not be onerous at the notice stage, it is also "not invisible." Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008) (noting that, although the standard is "not particularly stringent," a plaintiff bears the burden of showing a "'reasonable basis' for his claim that there are other similarly situated employees" (citations omitted)). "Mere allegations will not suffice; some factual evidence is necessary." Purdham, 629 F. Supp. 2d at 548 (citation omitted).

### III. Discussion

#### A.    Motion for Conditional Certification

Plaintiff seeks conditional certification of this action as a collective action in order to facilitate notice to a putative class of "nurses and nurse assistants at those CHS in-patient facilities with Kronos time keeping systems beginning on the day of implementation, or three years from the date Plaintiffs' complaint was filed, whichever is later." (Doc. No. 47 at 9). Defendant opposes certification, arguing first that each CHS facility, and each unit within those facilities, employs their own policies and practices with respect to breaks for lunches and meal periods, including how discrepancies on time-sheets are reconciled, and whether nurses or NAs are required to carry signaling devices; second, that these variance in policies between units and facilities requires an individualized assessment as to whether each Plaintiff has suffered uncompensated work periods, making this an inappropriate case for collective action; and third, that the policies complained of are

6

not, by themselves, unlawful and any uncompensated time worked is actually the result of a decentralized failure to apply CHS's written policy. The Court will first address the appropriate legal standard to be applied before turning to the merits of Plaintiffs' Motion.

1.    Standard of Review

The parties disagree as to whether Plaintiffs need only make a "minimal" showing, based on the pleadings, affidavits, and declarations, that the members of the putative class are similarly situated for the purposes of certification, or if something more is required at this initial stage. Defendant, for its part, argues that the Court should apply an "intermediate" approach, which requires a more stringent showing in cases where some, but not all, discovery has been completed, to determine whether Plaintiffs have demonstrated that they and the potential opt-ins are similarly situated (Doc. No. 40 at 11). Plaintiffs counter that insufficient discovery has occurred to trigger the intermediate approach, which courts normally apply only after "substantial" discovery has occurred (Doc. No. 47 at 3).

Importantly, Plaintiffs argue that Bunyan v. Spectrum Brands, Inc., No. 07-CV-089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008), relied on by Defendant, is distinguishable from the case at bar. In Bunyan, the court recognized that where "substantial, but not all discovery" has occurred prior to plaintiff's motion for certification, courts have applied an "intermediate" approach to the traditional two-step inquiry which allows the court to consider the facts before it. "[W]here plaintiffs successfully make a more stringent showing based on the available evidence, the class may be conditionally certified, thereby giving defendants an opportunity to move for decertification upon the completion of discovery." Id. The court in Bunyan concluded this intermediate standard of review was appropriate because the parties had engaged in more than eleven months of discovery by the time the plaintiffs filed their conditional certification motion. Id.

7

Plaintiffs urge the Court to disregard Bunyan because in that case the court used the typical two-step certification analysis, whereas here, the Court rejected the parties request for a two-tiered discovery schedule. Plaintiffs instead argue that because the Court ordered only a single period of discovery, and discovery was far from complete at the time Plaintiffs filed the instant Motion, the traditional lenient standard should be applied in consideration of this Motion. (Doc. No. 47 at 2-5). However, Plaintiffs' assertion is not correct. Although the Court did not explicitly bifurcate discovery in the manner requested by the parties, the Court did anticipate that the two-step analysis would be applied. Specifically, the Court adopted the parties' proposed deadline for the Certification Motion, which necessarily anticipated that a truncated period of discovery would occur prior to the Motion being due on May 13, 2011. (Compare Doc. No. 11 with Doc. No. 14). Furthermore, the Court scheduled a hearing on the Certification Motion with ample time for the Court to decide whether to conditionally certify the class or not, prior to the close of discovery. This position was confirmed in email correspondence between counsel for the parties and a law clerk to Judge Whitney, to whom this case is assigned, on or about May 11-12, 2011. (Doc. No. 51-1 at 7-13). In an initial email, Judge Whitney's law clerk stated:

> It has also come to our attention that . . . the case management order may need to be amended to include a final certification of collective action after the close of "Merits Discovery." See Williams v. XE Servs., LLC, No. 2:09-cv-59-D, 2011 WL 52353 (E.D.N.C. Jan. 4, 2011). If there is any opposition to this, please let me know and provide supporting case law.

(Doc. No. 51-1 at 13). Counsel for Defendant replied, suggesting that amendment of the case management order may be necessary only in the event that the Court conditionally certified the case for collective action. Judge Whitney agreed and adopted this position. (Id. at 8).

Thus the record, taken as a whole, does not support Plaintiffs' characterization that the Court "rejected the two tiered approach." (Doc. No. 47 at 3). Instead, although the Court did not adopt

8

the parties' vocabulary (i.e. "Notice Discovery" and "Merits Discovery"), the Court did adopt the parties' proposed time-frame for moving for conditional certification while also allowing for discovery to proceed in an efficient manner while the conditional certification issue was being considered.

The critical point is that the parties agreed and anticipated that some discovery was to occur prior to the Certification Motion coming due, and the Court adopted this discovery time-frame. Thus, while it may be that "significant" discovery has not yet occurred–or at least, did not occur at the time Plaintiffs filed their Certification Motion–the Court cannot ignore the fact that the parties requested, and engaged in, some discovery on the certification issue. In fact, the parties had more than three months in which to engage in meaningful discovery prior to the Certification Motion becoming due. (See Doc. No. 26). During that period, the parties exchanged interrogatories and documents and took a number of Plaintiffs' depositions in advance of the May 17, 2011 deadline, with several more depositions being noticed to occur shortly after the Certification Motion was filed.[2] "The Court cannot close its eyes to the amount of discovery already performed in this action. At the same time, the Court [should be] cognizant that Plaintiffs seek only conditional certification at this point and that discovery is not complete." Bunyan, 2008 WL 2959932 at * 4. Accordingly, the Court will apply the "intermediate" approach which allows for the Court to determine "whether a sound basis exists for proceeding as a collective action while also considering all evidence available at the time." Id.; see also Villanueva-Bazaldua v. TruGreen Ltd. Partners, 479 F. Supp.

---

[2] Although the Case Management Order initially set the Certification Motion deadline for May 13, 2011, the Court initially extended that deadline to May 16, 2011, and ultimately to May 17, 2011, after Plaintiffs sought a longer extension, which was denied. (Doc. No. 26). Because CM/ECF automatically generated a response deadline to Plaintiffs' timely motion for extension of time *after* the Certification Motion was due, and Defendant did not respond to Plaintiff's motion for extension of time until May 11, 2011, the Court concluded some additional time in which to file Plaintiffs' Certification Motion was permissible. (Id.)

9

2d 411, 415 (D. Del. 2007) (recognizing that "[d]istrict courts in other circuits have adopted an intermediate approach to the 'similarly situated' inquiry when the parties *voluntarily engage* in discovery prior to a decision on conditional certification" (emphasis added)); Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1021, 1080-81 (D. Kan. 1998) (applying "intermediate" review where a number of plaintiffs had already opted-in and the parties had engaged in three months of discovery prior to the filing of the motion for conditional certification); Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 895 (N.D. Iowa 2008) (applying a "common sense" application of the two-step approach by determining "whether *conditional* certification of a collective action is appropriate by evaluating all the facts that have thus far been placed" before the court (emphasis included in the original)); Holt, 333 F. Supp. 2d at 1273-74 (considering evidence resulting from "extensive discovery" in determining whether to certify a collective action).

The question before the Court remains whether this is an appropriate case for certification, that is, whether "multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member." Purdham, 629 F. Supp. 2d at 549 (citation omitted). This determination is guided by the amount of information available to the court. Buaphakeo, 564 F. Supp. 2d at 893. Thus, when there is less information available to the court at the notice stage, "plaintiffs simply need to come forward with a factual basis, a colorable basis, or substantial allegations" that the named plaintiffs and putative class are similarly situated. Id. (citations omitted); see also Purdham, 629 F. Supp. 2d at 549 ("a court must have the benefit of some preliminary factual showing that a similarly situated group of potential plaintiffs exists" (internal quotations omitted)). On the other hand, where the court has the benefit of evidence uncovered during discovery prior to the notice stage, it may consider that evidence without forcing plaintiffs to clear the high hurdle normally reserved for the

10

second stage of the inquiry.  See <u>Bouaphakeo</u>, 564 F. Supp. 2d at 893.

2.    <u>Analysis</u>

Based on the record before it, the Court concludes that this is not an appropriate case for certification.  Plaintiffs have failed to present sufficient evidence that the putative class is similarly situated for the purposes of the FLSA.  Plaintiffs and Defendant agree that, in order to be similarly situated, Plaintiffs and the members of the putative class must be "victims of a common policy or plan that violated the law."  (<u>See</u> id. at 6; Doc. No. 40 at 12).  As Defendant correctly notes, a policy which automatically deducts pay for meal periods is not, by itself, unlawful under the FLSA. <u>See</u> <u>Colozzi v. St. Joseph's Hosp. Health Ctr.</u>, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009) (rejecting the application of Kronos' automatic deductions as a common factual nexus sufficient to certify a collective action "since something more is required to establish that the putative class members were subject to the same unlawful practice"); <u>see also</u> <u>Lindberg v. UHS of Lakeside, LLC</u>, 761 F. Supp. 2d 752, 759-61 (W.D. Tenn. 2011) (conditionally certifying a collective action based on an automatic time deduction policy "that placed the burden of correction on hourly employees, [defendants] were aware of, permitted, and/or demanded that employees continue to work during unpaid meal periods, and [defendants] routinely ignored or discouraged the use of time adjustment forms to reverse the automatic deduction").  Nor does requiring nurses to be "on call" during a meal break, where there is no actual interruption, require compensation or constitute a FLSA violation. <u>See</u> <u>Reimer v. Champion Healthcare Corp.</u>, 258 F.3d 720, 725 (8th Cir. 2001) (holding that under the predominate benefit test, also applied in the Fourth Circuit, simply being on-call is not compensable work for the purposes of the FLSA); <u>Roy v. Cnty. of Lexington, South Carolina</u>, 141 F.3d 533, 545 (4th Cir. 1998) (affirming a lower court ruling that emergency response employees were not entitled to compensation during meal periods where they "had no official responsibilities

11

during this period of time other than to respond to an emergency if called upon"). Thus, critical to Plaintiffs' claims is Defendant's policy requiring nurses and NAs be "on-call" during their lunch breaks *combined* with the automatic deduction policy, which resulted in Plaintiffs and the putative class members failing to receive regular or overtime compensation for hours actually worked. (Compl. ¶¶ 8-12; Ashcraft Aff. ¶¶ 1-2; Blaney Aff. ¶¶ 1-2; Boles Aff. ¶¶ 1-2; Bradshaw Aff. ¶¶ 1-2; Brice Aff. ¶¶ 1-2; Britt Aff. ¶¶ 1-2; Cassie Aff. ¶¶ 1-2; Cheatham Aff. ¶¶ 1-2; Coveney Aff. ¶¶ 1-2; Harris Aff. ¶¶ 1-2; Harrison Aff. ¶¶ 1-2; Madonia Aff. ¶¶ 1-2; McGee Aff. ¶¶ 1-2; Robinson Aff. ¶¶ 1-2; Uribe Aff. ¶¶ 1-2). Indeed, Plaintiffs agree and maintain they "do not rely on the mere fact that Defendant maintained a policy of automatically deducting thirty minutes of time from each full shift worked by the Plaintiffs as being unlawful." (Doc. No. 47 at 6). Instead, Plaintiffs "rely on the fact that those thirty minutes of time were automatically deducted from each full shift worked–purportedly for a meal period–and during those thirty minutes Plaintiffs were regularly interrupted and/or required to work and/or the meal period was missed completely." (Id.)[3]

As defined in this manner, however, this policy was not applicable to all members of the putative class. The record here establishes that there was no common, CHS-wide policy which required all non-exempt nurses and NAs employed in in-patient facilities to carry signaling devices to lunch, or which required nurses and NAs to be "on-call"during their lunch breaks. Defendant submits 26 declarations of nurses and NAs working at in-patient facilities in the CHS system, many

_____

[3] The unlawful "common policy"which allegedly binds named Plaintiffs, opt-ins, and class members together has been a moving target during the course of litigation. Plaintiffs initially alleged that Defendant required nurses and NAs at all CHS facilities, regardless of unit, to carry electronic signaling devices during their breaks and automatically-deducted a meal break from each putative class member. (Compl. ¶¶ 8-14). At the September 12, 2011 hearing, however, it appeared that Plaintiffs revised the unlawful policy to be one of a failure to communicate to Plaintiffs' their ability to receive full compensation for interrupted meal-breaks. (See Certification Hr'g Tr. 7:20-8:24). That the course of discovery has compelled Plaintiffs to revise the policy complained of in such a drastic fashion alone counsels against certification.

12

of whom were not required to carry pagers, ASCOM phones, or other signaling devices during their lunch breaks. (See, e.g., Aldridge Decl. ¶ 14; Nicholls Decl. ¶ 15; ). Furthermore, some of the named Plaintiffs admitted in deposition testimony that some units do not require nurses or NAs to carry signaling devices during meal breaks. Plaintiff Blaney, for example, stated that in her current unit, the intensive care unit at CMC-NorthEast, she does not carry an ASCOM phone or any equivalent. (Blaney Dep. 89:1-11). Thus, without some evidence of a common policy which required nurses and NAs to be "on call" during their meal breaks, Plaintiffs are left with only a lawful policy of automatic deductions. Cf. Lindberg, 761 F. Supp. 2d at 761 (finding certification appropriate where plaintiffs made a "modest factual showing" of an automatic deduction policy *combined with* a general policy of unenforcement of time adjustment procedures and expectations that frequently prevented plaintiffs from taking meal breaks).

In fact, Defendant has established that many of the alleged common policies that Plaintiffs complain of are actually left to the decentralized discretion of the individual units and their exempt and non-exempt management staff. Each unit within a CHS facility has its own managerial staff comprised of an exempt Nurse Manager and non-exempt ANMs and Charge Nurses. (Phillips Decl. ¶ 7). These localized managers "supervise the unit staff on a daily basis and are charged with implementing [CHS's] policies, as well as creating unit-specific policies and practices related to the administering of policies governing scheduling needs, staffing, and meal break periods in order to address the patient needs that can vary within each unit." (Id.) Not only is there wide variance, depending on which unit a nurse or NA is assigned to, in the use of signaling devices and "on-call" requirements, but there is also wide variety in the way meal breaks are scheduled, and where meal breaks are taken. For example, in the Pre-Operative Holding Unit of CMC Main, there has been no pre-set time in which nurses leave for lunch since October 2010; instead, nurses and NAs leave for

13

lunch as they are relieved by their colleagues in the unit. (Byrum Decl. ¶ 15). In other units, however, meal breaks are pre-determined by the Charge Nurse. (See Banks Decl. ¶ 7). Additionally, some units require that nurses take their breaks on the unit floor, while other units had no restrictions on how far nurses and NAs may go for lunch. (Compare Waddell Decl. ¶ 12 with Giordano Decl. ¶ 13).

Defendant also presented evidence that the only CHS-wide policy that was in place during the relevant period required full compensation for all hours worked. (Def. Hr'g Ex. 1 at 17; Def. Hr'g Ex. 2; see also Doc. No. 31-1, filed under seal). Additionally, Defendant specifically instructed management staff, including exempt Nurse Managers and their superiors (Smith Dep. 151:19-25), in January 2008 that:

> Rest periods of short duration, usually 20 minutes or less, are customarily paid as worked time. Break and meal periods, typically thirty minutes or longer, are generally not compensable unless the employee is interrupted during this time to perform work related activities. *If this is the case, the entire break or meal period should be recorded as hours worked.*

(Def. Hr'g Ex. 1 at 18 (emphasis added)). In those facilities that utilized Kronos software, employees that had a meal break interrupted were able to have the automatic deduction reversed so that they would be credited for the full time worked. (Rhodes Decl. ¶ 13; Pl. Hr'g Ex. 1 at 35). In addition to the policies regarding the scheduling of meal breaks and the manner in which meal breaks are taken varying between units, each unit also implemented different methods for entering corrections into nurses and NAs' time-sheets in order to account for missed or interrupted meal breaks. Some units required forms to be filed with the unit's management (see Aldridge Decl. ¶ 6), whereas other units solicit reversal requests verbally. (Carlton Decl. ¶ 9). The responsibility for training employees regarding meal-breaks and how to account for their time when interrupted ultimately fell to unit-level management. (Brice Dep. 75-77:14-1; Graham Decl. ¶¶ 5-6). The result

14

is that Defendant's policy requiring compensation for interrupted meal breaks was entirely dependent on decentralized management practices to ensure its enforcement; in essence, a policy against having a formal policy. Cf. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2554 (2011) (noting that a "'policy' of allowing discretion by local supervisors over employment matters" is insufficient to establish the commonality requirement of a class action certification pursuant to Rule 23). "When alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate." MacGregor v. Farmers Ins. Exch., No. 2:10-CV-03088, 2011 WL 2981466 at *3 (D.S.C. July 22, 2011) (internal quotations and citations omitted).

Plaintiffs' attempts to circumvent this lack of common policy are unavailing. At the Certification Hearing, Plaintiffs' counsel argued that the CHS's compensation policy, as explained to Plaintiffs, distinguished between a "missed lunch" and an "interrupted lunch." (Certification Hr'g Tr. 7:21-25). The policy materials disseminated to nurses and NAs during the relevant period stated, for example, that "[e]mployees that do not receive a meal break should use the Request for Edit form to notify their manager so appropriate edits can be made to the timecard." (Pl. Hr'g Ex. 1 at 35; see also Pl. Hr'g Ex. 2). Plaintiffs argue that the critical language, "[did] not receive a meal break," implies that, in order to be compensated for an interrupted meal break, the entire break would have to have been foregone such that no meal was taken. (Certification Hr'g Tr. 8:1-8). Thus, according to Plaintiffs, the policy, as it existed for the purposes of this suit (i.e., as it was articulated to CHS employees), violated the FLSA because it did not authorize compensation for a meal break in which only a few minutes were interrupted by work activity. Plaintiffs further argue that only top-level management knew that interruptions in meal breaks were to be compensated fully, but that line nurses and NAs were kept unaware that they could seek compensation for merely interrupted breaks.

15

(Certification Hr'g Tr. 13:11-18).

The essence of Plaintiffs' argument is that Defendant had in place an "unwritten" policy of only compensating Plaintiffs for a missed "meal break" as opposed to any interruption in the meal break, which superseded Defendant's written policy of full compensation. (See id.) A similar argument was recently rejected by the court in MacGregor. In that case, plaintiffs brought a FLSA action on behalf of themselves and a group of similarly situated "property claims representatives" against a defendant insurance provider for failure to pay overtime compensation. 2011 WL 2981466 at *1. The court rejected the plaintiffs' assertion that the defendant's alleged failure to pay was an unlawful common policy, instead finding it "a result, which plaintiffs claim is caused by a conglomeration of defendant's policies and practices," dependent on the individual actions of each supervisor in order to establish a violation of the law. Id. at *3. Noting that the plaintiffs conceded that the defendant's official policy required full compensation but maintained that an "unwritten" policy was in place that allowed supervisors to ignore requests for overtime pay, the court recognized that:

> [c]ourts have found the potential for an "unwritten policy" which could violate the FLSA sufficient to make plaintiffs "similarly situated" when numerosity and geographic diversity of presented affidavits demonstrate that the supervisors "overtime violations [were] . . . not the product of happenstance or ourtlier instances of rogue behavior by errant supervisors but were themselves policies (albeit unwritten ones) implemented consistently in a manner . . . on an ongoing basis."

Id. at *4 (alterations in the original) (quoting Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1239-40 (S.D. Ala. 2008)). The court, however, rejected the "unwritten policy" argument after concluding that "in the light most favorable to plaintiffs, the facts evince isolated supervisor conduct." Id. "If plaintiffs had provided even 'modest factual support' of any unwritten policy contradictory to [the defendant's] stated policy to pay employees for overtime, collective treatment

might be appropriate, however, no such evidence is before the court." Id.

Likewise, here, Plaintiffs have presented no evidence of any unwritten policy which discouraged full compensation for even interrupted breaks, nor have Plaintiffs presented evidence of any requests for reversals of the auto-deduction that were denied.[4] Instead, in support of this argument, Plaintiffs note that Defendant changed its policy following the filing of this suit to require that nurses clock in and out for lunch, so that no interrupted meal breaks would be over-looked, and "made their policy crystal clear to the employees that if they do not receive a full uninterrupted 30-minute break" they have one of two options: either "you get to start your lunch break all over again to get your full 30 minutes of uninterrupted time, or, two, you can get paid for it." (Certification Hr'g Tr. 11-12:19-1; see also Pl. Hr'g Ex. 6). Not only does this argument run afoul of Fed. R. Evid. 407's exclusion of evidence of subsequent remedial measures to prove liability, but it is also clear that the "changes" Plaintiffs rely upon are efforts to clarify and amplify an already existent policy, as noted above. At the end, instead of a common policy that violated the law, Plaintiffs have only alleged a situation in which they were too uninformed to take care of their own business.

Even assuming that Plaintiffs and the putative class were victims of a common policy that violated the law, certification would still not be appropriate. Defendant has presented significant evidence that in order to resolve the claims of each plaintiff, individualized determinations as to whether the FLSA requirements were violated will be necessary. Purdham v. Fairfax County Public

---

[4] Without evidence of denied requests for auto-deduction reversals, Plaintiffs have a similar situation to the one described by the MacGregor court where there was no uniform practice among the defendant's supervisors, "but rather decentralized and independent action by supervisors that is contrary to the company's established policies, [and] individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action." 2011 WL 2981466 at * 4.

Schools, 629 F. Supp. 2d 544 (E.D. Va. 2009) is illustrative. In Purdham, the court denied certification of a collective action brought under FLSA for reimbursement of volunteers that provided athletic coaching and other services for the Fairfax County, Virginia public schools. 629 F. Supp. 2d at 546. The court concluded that certification was not appropriate in large part because the defendant had submitted evidence that the individual schools themselves had discretion to set the amount of compensation for the services rendered by the plaintiff volunteers. Id. at 549. Additionally, the volunteer coaches themselves determined how many hours they would work. Because it appeared that "each individual's case will require the [c]ourt to consisder different background facts, different testimony, and different legal issues," the court denied the plaintiffs' certification motion. Id. at 552.

The variations in scheduling of meal breaks and methods in accounting for missed meal periods among the putative class, noted above, are relevant to the certification question because, ultimately, the substantive question of whether each Plaintiff or putative class member may recover under the FLSA is an individualized, fact-intensive inquiry. The question for each nurse or NA employed at a CHS in-patient facility will ultimately be whether they were compensated for periods actually worked at either the normal rate or overtime rate, which will require the court, and eventually a jury, to determine whether each individual plaintiff actually took lunch breaks, their frequency and duration, whether each plaintiff's supervisor advised the employee how to report worked lunch breaks, whether the employee did in fact report worked lunch breaks, how many breaks were interrupted, if any, and how many of the missed or interrupted breaks were, in fact compensated. MacGregor, 2011 WL 2981466 at *6. This question in turn hinges on whether the individual's meal was compensable, which is itself a fact-intensive inquiry. See 29 C.F.R. § 785.15; Perez v. Mountainaire Farms, Inc., ___ F.3d ___, 2011 WL 2207110 at *11 (4th Cir. 2011) (slip

18

copy) (applying the "'predominant benefit' factual analysis" to determine whether the time spent donning and doffing protective clothing prior to meal breaks is compensable).

Although the actual time worked and wages due may not normally be relevant for the purposes of a conditional certification motion, see De Luna-Guerrero, 338 F. Supp. 2d at 654, the Court cannot ignore this consideration where there is evidence demonstrating the unique position each potential class member would find themselves in while prosecuting their FLSA claims against Defendant. The purpose behind collective actions is to allow for a streamlined and efficient adjudication of the claims of similarly situated plaintiffs. See Hoffmann-LaRoche Inc., 493 U.S. at 170-171. Where the record before the court demonstrates that there is no common policy or scheme and instead individualized questions of fact predominate, the action is not an appropriate one for certification. Furthermore, the Court need not certify the action and facilitate notice where, based on the same record available to it presently, it would inevitably decertify the action in a month's time. Purdham, 629 F. Supp. 2d at 547; see also Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007) ("In considering a motion to decertify alleging dissimilarity of the plaintiff class, courts have considered three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations" (internal quotations omitted)).

Plaintiff argues that Defendant's arguments in opposition to certification were considered and rejected in Hintergerger v. Catholic Health System, No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009), a case on point. Specifically, the defendant in that case argued against conditional certification because:

(1) [p]laintiffs have not demonstrated the existence of a policy or practice that

19

extends beyond their individual circumstances; (2) potential class members are not similarly situated by virtue of their membership in different bargaining units or no bargaining units at all; and (3) final adjudication of [p]laintiffs' claims necessarily requires individualized inquiry.

Id. at *8. The court rejected the defendant's arguments, determining it would not be appropriate to "weigh evidentiary submissions and render credibility determinations" at the preliminary stage of the litigation at which the plaintiffs had submitted their certification motion. Id. Importantly, however, the Hintergerger plaintiffs filed their certification motion *the day after* filing their complaint. Id. at *3. No discovery had occurred and that case was on a very different procedural footing than in the case at bar; the court had nothing to rely upon except the plaintiffs' allegations, affidavits, and declarations. Furthermore, the Hintergerger court recognized that where court-supervised, limited discovery occurs prior to the filing of a certification motion, it would be appropriate to "'scrutinize the merits based on the record developed to date.'" Id. at *8 (quoting Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008)).

Accordingly, because Plaintiffs have not presented sufficient evidence that Plaintiffs and the members of the putative class were victims of a common policy that violated the law, and because Defendant has presented evidence, based on the record available, that Plaintiffs and the putative class are not, in fact, similarly situated, conditional certification of collective action is inappropriate. Plaintiffs' Certification Motion is therefore DENIED.

**B.      Defendant's Motion to Strike**

Defendant moves to strike certain class allegations contained in the affidavits and declarations filed in support of Plaintiffs' Certification Motion. Specifically, Defendant argues that the allegations should be stricken because they are not based on the affiants' personal knowledge, as required by Fed. R. Evid. 602, and because the statements contained in the affidavits and

20

declarations are directly contradicted by subsequent deposition testimony. (Doc. No. 37). However, because the Court denies Plaintiffs' Certification Motion, Defendant's Motion to Strike—which ultimately sought as relief dismissal of Plaintiffs' Certification Motion–is DENIED as moot.

### IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs Motion for Conditional Certification (Doc. No. 29). Defendant's Motion to Strike Class Allegations Contained in Plaintiffs' and Opt-In Plaintiffs' Declarations and Affidavits Submitted with Their Motion for Conditional Certification (Doc. No. 36) is DENIED as moot. Consistent with this ruling, the opt-in Plaintiffs are no longer parties to this action; should Defendant move to dismiss, the Court will dismiss the opt-in Plaintiffs without prejudice, and with leave to intervene pursuant to Fed. R. Civ. P. 20.

IT IS SO ORDERED.

Signed: September 16, 2011

Graham C. Mullen
United States District Judge

21